UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CONSUELO KELLY-LEPPERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00369-SRC |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum and Order

After this case sat in a limbo of multidistrict litigation for several years, the Judicial Panel

on Multidistrict Litigation remanded it to this Court in late 2025. At a post-remand status

conference, the Court informed the parties that, for reasons related to the convenience of the

parties and the interest of justice, it was considering a transfer of venue. Now, after hearing from

the parties, and for the reasons stated below, the Court transfers this case to the Western District

of Missouri, Western Division (Kansas City).

**I. Background**

**A. Factual background**

Kelly-Leppert brought this wrongful-death action against Monsanto, alleging that

Monsanto's design, manufacture, marketing, and distribution of its Roundup herbicide led to her

husband's death in 2011. Doc. 1 at ¶¶ 1, 120–23. Specifically, she alleges that the active

ingredient in Roundup, glyphosate, is a known carcinogen, and that Monsanto has known about

the carcinogenic nature of Roundup since the 1980s but has nonetheless continued to promote

Roundup as being safe. *See id.* at ¶¶ 42–60. Kelly-Leppert sues Monsanto for: (1) strict liability

(design defect), *id.* at ¶¶ 131–49; (2) strict liability (failure to warn), *id.* at ¶¶ 150–68;

(3) negligence, *id.* at ¶¶ 169–83; (4) fraud, misrepresentation, and suppression, *id.* at ¶¶ 184–94;

(5) violation of the Missouri Merchandising Practices Act, *id.* at ¶¶ 208–14; (6) breach of express warranties, *id.* at ¶¶ 215–27; and (7) breach of implied warranties, *id.* at ¶¶ 228–42.  She seeks compensatory and punitive damages against Monsanto, as well as interest, costs, and attorneys' fees.  *Id.* at 42–43 (The Court cites to page numbers as assigned by CM/ECF.).

### B.      Procedural background

Kelly-Leppert originally sued Monsanto in the District of Kansas in March 2020.  *See* Civil Complaint, *Kelly-Leppert v. Monsanto Company*, No. 2:20-cv-02121-KHV-TJJ (D. Kan. Mar. 16, 2020), doc. 1 ("*Kelly-Leppert I*").  But after Monsanto filed a motion to dismiss in that case, *see Kelly-Leppert I*, doc. 66, Kelly-Leppert and Monsanto stipulated to a voluntary dismissal, *see Kelly-Leppert I*, doc. 73.

Kelly-Leppert filed this case in March 2021.  *See* doc. 1.  Less than a month later, the case was transferred to multi-district litigation (MDL) in the Northern District of California.  Doc. 4.  Then, in December 2025, the Judicial Panel on Multidistrict Litigation severed Kelly-Leppert's case from the MDL and remanded it to this Court.  *See* doc. 12.  The Panel upheld the transferee judge's finding that Kelly-Leppert "allege[d] that her deceased husband was diagnosed with colorectal cancer" (rather than non-Hodgkin's lymphoma), and that, consequently, "litigation of her claims within the MDL [would] not be efficient."  *Id.* at 1.

This Court then set a status conference, instructing the parties to be prepared to discuss the progress of the case, any discovery taken to date, and the remaining discovery needed.  Doc. 13.  The Court held the status conference on February 5, 2026, informed the parties that it was considering transferring this case to a different venue, and ordered the parties to submit supplemental briefing on this issue.  *See* doc. 26.  Kelly-Leppert and Monsanto each timely filed a response.  Docs. 27, 28.  The Court now takes up the issue.

## II.    Standard

Under 28 U.S.C. § 1404(a), a district court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  While transfer of venue is typically handled via motion, the Court may order such transfer *sua sponte*.  *See Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 972 (8th Cir. 2012) ("There is authority supporting the district court's ability to sua sponte transfer a case under § 1404(a)." (citation omitted)); *see also* 15 *Wright & Miller's Federal Practice & Procedure* § 3844 (4th ed. 2025) (noting that the language of 28 U.S.C. § 1404(a) "is broad enough that a district court can order transfer on its own initiative").  Before transferring a case, however, the court must find that the transfer is "[f]or the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  This requires "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Terra Int'l v. Miss. Chem. Co.*, 119 F.3d 688, 691 (8th Cir. 1997).

For the "convenience of parties and witnesses" prong, the Supreme Court has provided several factors for courts to consider, such as:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  Similarly, the Eighth Circuit has stated that courts may consider factors such as (1) "the convenience of the parties," (2) "the convenience of the witnesses," including their willingness to appear, the ability to subpoena them, and the adequacy of deposition testimony, (3) "the accessibility to records and documents," (4) "the location where the conduct complained of occurred," and (5) "the

3

applicability of each forum state's substantive law." *Terra Int'l*, 119 F.3d at 696 (citation omitted).

For the "interest of justice" prong, courts may consider factors such as "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696; *see also Atl. Marine*, 571 U.S. at 62 n.6 (listing similar factors).

## III.    Discussion

The Court informed the parties that it was considering transferring this case to one of the two districts that has a considerably greater connection to this case, and in which the decedent was allegedly exposed to glyphosate:  either the District of Kansas, where Kelly-Leppert resides and filed her original suit, or the Western District of Missouri, where most of the decedent's medical treatment took place. *See* doc. 26.  In its supplemental briefing, Monsanto stated that it "has no objection to the transfer of this action to either potential transferee court."  Doc. 27 at ¶ 2. Kelly-Leppert, however, stated that she "wishes to keep the case in the United States District Court for the Eastern District of Missouri."  Doc. 28 at 1.  After thoroughly considering all relevant factors and the responses of the parties, the Court finds that transfer to the Western District of Missouri, Western Division (Kansas City) is appropriate under section 1404(a).

### A.    Whether Kelly-Leppert's action might have been brought in the Western District of Missouri

The Court must first determine whether the Western District of Missouri is a venue where the action "might have been brought."  28 U.S.C. § 1404(a).  That is, at the time Kelly-Leppert filed the action, the Western District of Missouri must have had personal jurisdiction over

4

Monsanto, and it must have been a proper venue. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).

### 1. Personal jurisdiction

Kelly-Leppert alleges, and Monsanto concedes, that Monsanto is "a Delaware corporation . . . with a [principal] place of business in St. Louis, Missouri." Doc. 1 at ¶ 10; *see* doc. 12-1 at 66 ("Monsanto admits that it is an agricultural biotechnology corporation with its principal place of business in St. Louis County, Missouri."). Having its principal place of business in Missouri, Monsanto is considered "at home" in Missouri, meaning it is subject to general jurisdiction in Missouri state (and, by extension, federal) courts. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021) (noting that the "paradigm" cases for general jurisdiction over a corporation are its place of incorporation and its principal place of business); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." (citing Fed. R. Civ. P. 4(k)(1)(A))). So had Kelly-Leppert initially filed her case in the Western District of Missouri, that court would have had personal jurisdiction over Monsanto, a point Monsanto does not dispute. *See generally* doc. 27.

### 2. Venue

As relevant here, a plaintiff may bring a civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In assessing proper venue, the Court does not ask "which district among two or more potential forums is the 'best' venue"; rather, the Court should ask "whether the district . . . had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (citation omitted).

The Eighth Circuit has held that, "by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). But this does not mean that the Court, in applying section 1391(b)(2), "may *only* consider the defendant's allegedly wrongful activities"—it means merely that "the [C]ourt's *focus* must be on relevant activities of the defendant in the forum state." *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (emphasis in original).

Here, Kelly-Leppert alleges that Monsanto "advertises and sells goods, specifically Roundup, in the State of Missouri and the State of Kansas." Doc. 1 at ¶ 12. In its Answer, Monsanto "admits that it sells Roundup®-branded products in Missouri and Kansas." Doc. 12-1 at 66. Further, Kelly-Leppert stated during the February 5 status conference that she and her late husband resided in the Kansas City, Missouri area from the 1970s to the late 1980s, and that her husband was exposed to Roundup during this time. *See* doc. 26; *see also* doc. 28 (noting that Kelly-Leppert "resided in Missouri for approximately nineteen years").

Because (1) Monsanto sells Roundup throughout Missouri, which includes the Western District of Missouri, and (2) the decedent's alleged exposure to Roundup occurred in part while he and Kelly-Leppert resided in the Western District of Missouri, the Court finds that the Western District constitutes "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2). Thus, even if the Eastern District of Missouri or the District of Kansas would be suitable venues for this action, the Western District of Missouri nonetheless has a "substantial connection" to Kelly-Leppert's wrongful-death claim, rendering it a proper venue. *Pecoraro*, 340 F.3d at 563; *see* 28 U.S.C. § 1391(b)(2). The Court also notes that venue in the Western District of Missouri would be proper under sections 1391(b)(1) and 1391(d) as well. *See* 28 U.S.C. §§ 1391(b)(1), (d).

6

Having found that the Western District of Missouri is a venue where Kelly-Leppert's action "might have been brought," 28 U.S.C. § 1404(a), the Court now considers whether the "convenience" and "interest of justice" prongs of section 1404(a) favor transfer.

**B.       Convenience**

The Court finds that several of the "convenience" factors favor transfer. *See Terra Int'l*, 119 F.3d at 696. As to the convenience of the parties, the Court notes that Kelly-Leppert's address of record, as well as her representations to the Court at the February 5 status conference, indicate that she currently resides near Kansas City, Kansas. *See, e.g.*, doc. 26; doc. 28 at 2 (listing Kelly-Leppert's address). Thus, Kelly-Leppert's travel time would be much shorter if her case proceeded in the Western District of Missouri, Western Division—which is located in Kansas City, Missouri—than if her case remained in the Eastern District of Missouri, over 200 miles away from her residence. The Court finds this factor especially persuasive given Kelly-Leppert's prior reticence to travel to the Eastern District of Missouri due to her health conditions. *See* doc. 20 at 5; doc. 22. Additionally, while Monsanto's principal place of business is in St. Louis, Missouri, lead counsel for Monsanto informed the Court at the February 5 status conference that he operates out of his firm's Kansas City, Missouri office. *See* doc. 26. The "convenience of the parties" factor therefore weighs in favor of transfer. *See Terra Int'l*, 119 F.3d at 696.

Next, the Court considers the convenience of any potential witnesses. While Kelly-Leppert has not yet indicated who her witnesses will be, counsel for Monsanto informed the Court at the February 5 status conference that Monsanto intends to depose the decedent's treating physicians, who are located in the Kansas City, Kansas and Kansas City, Missouri areas. *See* doc. 26. This factor also favors transfer.

7

Turning to the "accessibility to records and documents," *see Terra Int'l*, 119 F.3d at 696, the Court notes that the parties would have easier access to the decedent's medical records if this case were transferred to the Western District of Missouri. Indeed, Kelly-Leppert indicated at the February 5 status conference that her late husband's treatment occurred at hospitals in the Kansas City, Kansas and Kansas City, Missouri areas. *See* doc. 26; *see also In re Apple, Inc.*, 602 F.3d 909, 914 (8th Cir. 2010) ("While electronic filing may lessen the inconvenience of document handling, if the need arises to refer to original documents or evidence in the litigation, [the forum where the documents were stored] would prove more convenient.").

The factor regarding "the location where the conduct complained of occurred" similarly favors transfer. *See Terra Int'l*, 119 F.3d at 696. As noted above, the decedent's exposure to Roundup occurred in part in Kansas City, Missouri. Lastly, the Court finds that the final convenience factor, "the applicability of each forum state's substantive law," *see id.*, is neutral in this analysis. The applicable substantive state law would remain unchanged if the Court transferred this case to the Western District of Missouri from the Eastern District of Missouri. On balance, the convenience factors favor transfer.

### C. Interest of justice

The Court similarly finds that the majority of the "interest of justice" factors weigh in favor of transfer. *See id.* First, the comparative cost of litigation would likely be lower in the Western District of Missouri because litigating in that district would decrease travel expenses for both Kelly-Leppert and Monsanto's counsel. *See In re Apple*, 602 F.3d at 913–14; *see also* doc. 20 at 5; doc. 22; doc. 26; doc. 28 at 2.

As to judicial economy, the Court notes that, while docket congestion "is not by itself[] a dispositive factor," it is "a permissible factor to consider" in deciding whether to transfer a case under section 1404(a). *In re Apple*, 602 F.3d at 915 (citation modified). For the 12-month

period ending December 31, 2025, the median time from filing to disposition of civil cases was similar in the Eastern and Western Districts of Missouri—6.3 months and 6.5 months, respectively. *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December 31, 2025)*, U.S. Cts., https://www.uscourts.gov/data-news/data-tables/2025/12/31/federal-court-management-statistics/n-a-3. But in that same time period, the median time from filing to trial was 35.3 months in the Eastern District of Missouri and 27 months in the Western District of Missouri. *Id.* While statistics don't tell the whole story, Kelly-Leppert's case has a reasonable chance of proceeding to trial sooner in the Western District of Missouri. The Court finds that this factor weighs in favor of transfer. *See In re Apple*, 602 F.3d at 915.

The Court next considers Kelly-Leppert's choice of forum. *See Terra Int'l*, 119 F.3d at 696. In her supplemental briefing, Kelly-Leppert notes that she would like to keep her case in the Eastern District of Missouri because she filed the action here, she resided in Missouri for "approximately nineteen years," her late husband was treated in Missouri, and she "maintains meaningful ties to the state of Missouri." Doc. 28 at 1–2. Further, many of her late husband's medical records "are maintained by the VA in Missouri," and keeping the case in this district would "avoid duplication of effort and unnecessary delay." *Id.* at 2. Finally, she states that, following the MDL proceedings, her case was "returned . . . to this Court, not to the District of Kansas or the Western District of Missouri." *Id.* Other than this last point, Kelly-Leppert's arguments counsel more strongly in favor of maintaining this case in the Western District of Missouri.

Generally, "federal courts give considerable deference to a plaintiff's choice of forum." *Terra Int'l*, 119 F.3d at 695; *see also In re Apple*, 602 F.3d at 913. But this general practice "is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple*, 602

9

F.3d at 913 (citing *Piper*, 454 U.S. at 255–56). And other factors may outweigh the plaintiff's choice of forum. *See Terra Int'l*, 119 F.3d at 695. For the reasons explained above, the Court finds that transfer to the Western District of Missouri would better serve the convenience of the parties and would likely promote judicial economy.

The Court also agrees that Kelly-Leppert "maintains meaningful ties" to Missouri but finds that those ties are to the Western District, and transfer to the Western District would equally, if not better, serve this interest. Additionally, the Court is not persuaded by Kelly-Leppert's argument that her case should remain in the Eastern District of Missouri simply because the JPML remanded her case to this district. Federal law requires the Panel, "at or before the conclusion of . . . pretrial proceedings," to remand the case "to the district from which it was transferred." 28 U.S.C. § 1407(a); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34–35 (1998) (noting that section 1407(a) "obligates the Panel to remand any pending case to its originating court when . . . pretrial proceedings have run their course"). In short, Kelly-Leppert's choice of forum is neutral at best. *See Terra Int'l*, 119 F.3d at 696.

The Court views several of the "interest of justice" factors as neutral. *See id.* Neither party has indicated to the Court that it would be unable to enforce a judgment against the other if this case were transferred to the Western District of Missouri. *See id.* Nor have the parties identified any obstacles to a fair trial that would exist in the Western District but not in the Eastern District. *See id.* Further, any existing conflict-of-law issues would remain the same, regardless of transfer, as this case will remain in a Missouri district court. *See id.* The factor regarding "the advantages of having a local court determine questions of local law" would be neutral for the same reasons. *See id.* On balance, the Court finds that the "interest of justice" factors weigh in favor of transfer. *See id.*

Having found that the Western District of Missouri is a venue where this action "might have been brought," *see* 28 U.S.C. § 1404(a), and that the convenience and interest-of-justice factors favor transfer, *see Terra Int'l*, 119 F.3d at 696, the Court finds that transfer of this case is appropriate.

## IV.  Pending motions

The Court also notes that Kelly-Leppert has filed numerous motions for appointment of counsel, docs. 33, 36, which are now ripe for review, docs. 37, 38.  Because the Court finds transfer appropriate, the Court denies these motions without prejudice.  Docs. 33, 36.  Kelly-Leppert also filed a "Notice of Filing Supplemental Clarification Following Meet-and-Confer," doc. 39, a motion to strike, doc. 41, and a motion to compel, doc. 43.  The Court takes no action on these filings.  The Court defers to the transferee court on scheduling and case management.

## V.  Conclusion

Accordingly, the Court transfers this case to the United States District Court for the Western District of Missouri, Western Division (Kansas City).  *See* 28 U.S.C. § 1404(a); 28 U.S.C. § 105(b)(1).  The Court also denies, without prejudice, Kelly-Leppert's [33] [36] motions for appointment of counsel.  The Court takes no action on Kelly-Leppert's [39] [41] [43] remaining filings.

So ordered this 22nd day of April 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

11